CASE 32—PETITION ORDINARY—DECEMBER 31.

# Kelly, &c., vs. Donahoe, &c.

### APPEAL FROM CLARKE CIRCUIT COURT.

1. The law is well settled that the condemnation of land for a turnpike road invests the company with no greater interest than the mere right to use the land for the purposes of the road. The company own the *road,* but not the *ground* over which it passes, and their ownership of the road does not vest in them nor take from the owner of the land any right but such as is essential to the enjoyment of their own rights and franchises. (3 *B. Mon.,* 517.)

2. A turnpike company, having the right under their charter to make such excavations, fills, and embankments, as the proper construction of their road according to its prescribed grade and width render necessary, may, as incidental to this right, lawfully quarry and remove stone and earth from one point to another within the lines of the road, and from the lands of one person to the lands of another. But they have no such right to the quarries and soil under and within the space occupied by the road, for the purposes of repairing it, although the road upon which the turnpike was built may have been used by the public for more than twenty years as a public highway.

3. The proprietor of land over which a turnpike road passes retains his exclusive right to the land, and to all mines, quarries, springs of water, &c., and the right to use the same for every purpose not inconsistent with the public right of way, and with the rights and franchises of the corporation. (3 *Kent,* 432.)

4. Independently of the general principles *supra,* the fact that the turnpike road charter and the Revised Statutes provide for the condemnation of quarries, beds of gravel or stone, earth, timber, or other materials necessary to be used in repairing the road, conclusively repels the claim of the company to such material for the purposes of repairing the road.

5. An action to recover damages for quarrying and removing stone, soil, &c., from the bed of a turnpike road for the purpose of repairing the road, may be maintained by the owners of the reversion in fee of the land upon which the road is built; but for the injury to the possession occasioned by placing quarried stone upon land adjacent to the road, and afterwards removing the same, the action must be by the tenant in possession of the land, and the act of 1854 does not apply.

GEO. SMITH, for appellants, cited *Sess. Acts* 1846–7, *p.* 238; *Sess. Acts* 1847–8, *p.*      ; 9 *Serg. & Rawle,* 26; 3 *Kent's Com.,* 432; *Rev. Stat.,* 617; *Act of March* 10, 1854, *Sess. Acts* 1853–4, *p.* 167.

HUSTON & DOWNEY, for appellees, cited *Sess. Acts* 1848–9, *sec.* 12, *p.* 334; 5 *J. J. Mar.,* 336; 8 *Dana,* 299, 301.

JUDGE DUVALL DELIVERED THE OPINION OF THE COURT:

Kelly and others brought this action against Donahoe and Skinner to recover damages for an alleged wrongful entry by

the latter upon the lands of the former, and for quarrying and removing therefrom a quantity of stone, soil, &c., and for placing upon the land of the plaintiffs quantities of quarried stone, and removing the same therefrom.

Donahoe answered, denying the allegations of the petition.

Skinner also denied the several acts of trespass complained of, but admitted that, as president of the Winchester and Mount Sterling turnpike road company, he had ordered his co-defendant, Donahoe, to quarry rock from the bed of said turnpike road for the purpose of repairing the same, insisting that he, as president of the company, had a perfect right to quarry rock from the bed of the road, and to use the same for the purposes of repairing the road, and of keeping it in good traveling condition.

Upon the trial it was proved that the Mount Sterling and Winchester turnpike road company, under the authority conferred by its charter, (*Sess. Acts* 1847–8,) constructed a turnpike road upon the site of what was called the " Grass Lick road," which, for more than forty years, had been used by the public as a highway; that the plaintiffs were the owners in fee of a tract of land, one of the boundaries of which extended to the center of the turnpike road; but the mother of the plaintiffs had intermarried with Smith, and the latter was in possession of the land under his wife's right of dower, which, it appears, had never been assigned to her.    It was also proved that the defendants had quarried, for the purpose of repairing the road, a quantity of stone upon the land of the plaintiffs, but within the lines and under the bed of the turnpike road ; and that the defendants had also placed some quarried stone on the land of the plaintiffs lying adjacent to the road, and had afterwards removed the same—this portion of the land being in the possession and use of Smith.

The court below was of opinion, and so instructed the jury, " that for rock quarried in *the bed of the road* which had been used by the public for more than twenty years as a public highway next before they were quarried, and used under the authority of the supervisors in repairing the road, the plaintiffs could not recover."    Nor could they recover for the act of the

defendants in placing rock upon the land owned by the plaintiffs and afterwards removing the same, provided said land was in the possession of another.

In the progress of the trial, and before the submission of the case to the jury, the defendant, Skinner, moved the court for a judgment in his favor upon the ground that there was no proof against him. The plaintiffs resisted this motion, and read in evidence the answer filed by Skinner; but the court overruled the objection and sustained the motion.

There was a verdict and judgment for one dollar in favor of the plaintiffs, and they have prosecuted this appeal, insisting that the court erred in sustaining the motion of Skinner, and in the instructions given to the jury.

The first and most important question presented by the instructions, is that which involves the nature and extent of the rights and interests acquired by the corporation, under their charter or under the general law, in and to so much of the land of the plaintiffs as is occupied by the road.

It is not pretended by the appellees that any of the provisions of the charter can be construed as investing the corporation with the fee-simple title to the land upon which the road is constructed, or with any other rights or powers than those usually conferred by similar acts of incorporation.

The law is well settled that the condemnation of land for a turnpike road invests the company with no greater interest than the mere right to use the land for the purposes of the road.

The company own the *road*, but not the *ground* over which it passes, and their ownership of the road does not vest in them, nor take from the owner of the land any right but such as is essential to the enjoyment of their own rights and franchises. (3 *B. Mon.*, 517.) It is undoubtedly true, as argued for the appellees, that the company had the right, under their charter, to make such excavations, fills, and embankments, as the proper construction of their road, according to its prescribed grade and width, rendered necessary; and, as incidental to this right, they might lawfully quarry and remove stone and earth from one point to another within the lines of the road, and from the lands of one person to the lands of another. These

rights, being necessary to the purposes for which the corporation was created, were, of course, implied in the general grant of its powers. But the same cannot be said of the right here asserted—the right to the quarries and soil under and within the space occupied by the road for the purposes of repairing it. If the right exist at all, it must be perpetual, and would terminate only with the dissolution of the corporation. It must also be exclusive, for there can be no such thing as a tenancy in common, or other community of interest in the soil, between the company and the original proprietor of the land. The legal consequence of this would be that the corporation might maintain an action against the proprietor for any invasion of, or interference with, such right. But the well settled doctrine is directly the reverse of all this. The proprietor retains his exclusive right to the land, and to all mines, quarries, springs of water, &c., and the right to use the same for every purpose not inconsistent with the public right of way and with the rights and franchises of the corporation. "He may carry water in pipes under the highway, and have every use and remedy that is consistent with the servitude or easement of a way over it, and with police regulations." (3 *Kent*, 432.)

Independently of these general principles, the claim under consideration is conclusively repelled by the charter itself, which makes special provision for the condemnation of quarries, beds of gravel or stone, earth, timber, or other materials necessary to be used in repairing the road. (*Sess. Acts* 1846–7.) And, besides, the Revised Statutes contain general and ample provisions upon the same subject, applicable to all turnpike roads.

Our conclusion, therefore, is, that the court erred in dismissing the action as to Skinner, and that the instruction given by the court upon the point under consideration was also erroneous.

We are of opinion that the second instruction was proper. The injury stated in that instruction was an injury to the possession, and not to the inheritance. The tenant in possession, therefore, could alone maintain an action for such injury. The act of 1854, relied upon by the appellants as conferring upon

them the right of action, has no application to this class of cases.

For the error mentioned the judgment is reversed, and the cause remanded for a new trial and further proceedings in conformity with this opinion.